UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 19 CR 567 |
| vs. | ) | |
| | ) | Hon. Harry D. Leinenweber |
| | ) | |
| DERREL MCDAVID | ) | |

## MOTION TO DISMISS COUNT 5 OF THE INDICTMENT

COMES NOW Defendant DERREL MCDAVID, by and through his attorneys, Blair T. Westover, Beau B. Brindley, and Vadim A. Glozman, and asks this Court to dismiss Count 5 of the indictment for failure to state an offense that occurred within the statute of limitations.

## INTRODUCTION

The indictment in this case charges Mr. McDavid with conspiring with co-defendant Robert Kelly and others to "alter, destroy[], mutilate[], conceal[], cover[] up, falsif[y], or make[] a false entry" into a "record, document, or tangible object" in violation of 18 USC §1519. The indictment alleges that, between 1997 and 2002, Mr. Kelly engaged in sexual acts with five minors and videotaped those acts. R.1 at 5. In April of 2000, the State of Illinois began an investigation into Mr. Kelly regarding his sexual contact with minors. Mr. Kelly was acquitted of those charges. *Id*. In summary, the indictment in the instant case alleges that Mr. Kelly and Mr. McDavid acted to obtain videos of sex acts with minors and to convince various witnesses to deny any sexual contact with Mr. Kelly. R.1

Mr. McDavid now asks this Court to dismiss Count Five of the indictment against him pursuant to Federal Rule of Criminal Procedure12(b)(3). "To be sufficient, an indictment must state each element of the crimes charged, provide the defendant with adequate notice of the

1

nature of the charges so that the accused may prepare a defense, and allow the defendant to raise the judgment as a bar to future prosecutions for the same offense." *United States v. Nayak*, 769 F.3d 978, 979-80 (7th Cir. 2014). In determining whether an indictment states an offense, the Court must accept the allegations in the indictment as true.[1] *Id.*; *United States v. Moore,* 563 F.3d 583, 586 (7th Cir.2009).

The problem with the government's indictment is multifold. First, the defendants cannot conspire to "conceal," "cover up," or "make false entry in" a "record, document, or tangible object" within the meaning §1519 if none of the objects identified in the government's indictment qualify as "objects" under §1519. The only objects identified within allegations contained in the indictment as it relates to Mr. McDavid are video tapes. These video tapes do not constitute a "record, document, or tangible object" as those terms are used in §1519. Nor does encouraging witnesses to provide false statements to state law enforcement constitute concealing, covering up, or falsifying a "record, document, or tangible object" within the meaning of §1519. The specific conspiracy charged by the government was to violate §1519. Conspiring to destroy evidence, which falls outside §1519, cannot constitute a conspiracy to violate §1519. Similarly, conspiring to suborn perjury or lie to law enforcement in a state investigation does not constitute a conspiracy to violate §1519.

Second, the indictment fails to allege the appropriate mental state. In order to be convicted under §1519, the defendants must act "in contemplation" of a possible federal investigation. In this case, Mr. McDavid's conduct was, by the government's own allegation, motivated by the desire to either impact the state investigation or keep information from the

---

[1] Mr. McDavid contests the factual allegations about his conduct in the indictment and does not concede any of them. However, for purposes of this motion, which is brought as a matter of law, the allegations must be assumed true.

public at large. The government does not allege that the defendants ever considered or anticipated or acted with any thoughts regarding any possible federal investigation.

Third, the statute of limitations for the alleged offense ran on July 11, 2014. R.1. The government must allege and prove an overt act occurring after that date in order to extend the conspiracy such that it is not barred by the statute of limitations. As discussed below, none of the acts identified in the government's indictment as occurring after July 11, 2014, furthered the purpose of the charged conspiracy or were within the charged conspiratorial agreement.

**ARGUMENT**

**I.**    **THE GOVERNMENT FAILS TO ALLEGE THAT MR. MCDAVID AND MR. KELLY CONSPIRED TO DESTROY AN OBJECT CONTEMPLATED UNDER THE TANGIBLE OBJECT PROVISION OF §1519.**

The scope of a conspiratorial agreement is defined by its criminal purpose. *Grunewald v United States*, 353 US 391, 401-06 (1957). In order to convict Mr. McDavid of a violation of §371, the general conspiracy statute, the government must allege and prove: "(1) an agreement to accomplish an illegal objective against the United States; (2) one or more overt acts in furtherance of the illegal purpose; and (3) the intent to commit the substantive offense." *United States v. Jackson,* 33 F.3d 866, 872 (7th Cir. 1994). In this case, the government has alleged that Mr. McDavid specifically conspired to commit a violation of §1519. R.1 at 7. Section 1519 states:

> "Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both."

18 U.S.C. §1519.

3

Essentially, §1519 has three elements: "(1) the defendants knowingly falsified a record or document; (2) the defendants acted with the intent to impede, obstruct, or influence an actual or contemplated investigation; and (3) the investigation concerned a matter within the jurisdiction of the U.S. Department of Justice or the Federal Bureau of Investigation." *United States v. Gonzalez*, 906 F.3d 784, 793 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1568, 203 L. Ed. 2d 730 (2019).

Section 1519, "all agree, was prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents." *Yates v. United States*, 574 U.S. 528, 135 S. Ct. 1074, 1081 (2015) (plurality opinion). To that end, "§1519 cured a conspicuous omission by imposing liability on a person who destroys records himself." *Id.*

Despite use of the phrase "tangible object," the Supreme Court has held that §1519 does not criminalize the spoliation or destruction of all evidence that is relevant to a potential federal investigation. *Id.* at 1083 ("If Congress indeed meant to make §1519 an all-encompassing ban on the spoliation of evidence, as the dissent believes Congress did, one would have expected a clearer indication of that intent.").

In *Yates*, the Supreme Court held that, in order for an object to fall within the ambit of §1519, it must be the type of object that is more akin to a record as opposed to simply physical evidence of a crime. *Yates*, 135 S. Ct. at 1085 ("The term is therefore appropriately read to refer, not to any tangible object, but specifically to the subset of tangible objects involving records and documents, *i.e.,* objects used to record or preserve information."); *United States v. Benton*, 890 F.3d 697, 711 (8th Cir. 2018), *judgment corrected* (May 15, 2018), *cert. denied*, 139 S. Ct. 1318 (2019) ("The Supreme Court has cautioned against 'cut[ting] §1519 loose from its financial-

fraud mooring to hold that it encompasses any and all objects, whatever their size or significance, destroyed with obstructive intent.'"). Indeed, the legislative history indicates that §1519 was intended as an "anti-shredding" provision. S.Rep. No. 107-146 (2002) (describing 18 USC §1519 as "a new general anti shredding provision" and explaining that "certain current provisions make it a crime to persuade another person to destroy documents, but not a crime to actually destroy the same documents yourself") (as cited in *Yates*, 135 S. Ct. at 1081).

The Supreme Court indicated that the statute was specifically directed at file keeping: "Although many of those verbs could apply to nouns as far-flung as salamanders, satellites, or sand dunes, the last phrase in the list—'makes a false entry in'—makes no sense outside of file keeping." *Yates*, 135 S. Ct. at 1090 (2015) (J. Alito, concurring).

To that end, the *Yates* Court held that a fisherman who tossed an undersized fish overboard to avoid that fish being discovered by a federal agency, did not destroy a "tangible object" within the meaning of §1519. *Id.* at 1078-89. While a fish, like any other physical object which exists in the world, can contain information in some ontological sense (it contains the size of the fish, if nothing else), that is not the type of information that Congress intended to fall within the meaning of §1519. *Id.*; *see also United States. v. McRae*, 795 F.3d 471, 477-78 (5th Cir. 2015) (body of victim and car not tangible object for purposes of 18 U.S.C. §1519).

**A. Videos Depicting Sexual Contact Between Mr. Kelly And Minor Victims Are Not Objects Within The Meaning Of §1519.**

Paragraph 5 of Count 5 alleges that "It was further part of the conspiracy that, in order to conceal and cover up the existence of videos from investigators, KELLY, MCDAVID, and others agreed to collect the missing videos that depicted KELLY engaged in sexual contact and sexual acts with minors". R. 1 at 8.

5

A video depicting child pornography is simply not the type of "object" that falls within the meaning of §1519. Justice Alito, concurring with the majority in *Yates*, explained that the type of "tangible object[s]" referred to by §1519, are those used to store information traditionally recorded in paper documents and records. Thus, a defendant cannot argue that destroying a computer, for example, that stores records, is not criminal because the computer *itself* is not a document or record. *See, e.g., Yates*, 135 S. Ct. at 1089 (J. Alito, concurring) ("A hard drive, however, is tangible and can contain files that are precisely akin to even these narrow definitions. Both "record" and "document" can be read more expansively but, adding "tangible object" to § 1519 would ensure beyond question that electronic files are included."). However, video tapes that, in no sense, contain information traditionally recorded in paper documents are simply not the type of objects to which §1519 applies. A video of a criminal *act* is more akin to a fish than a file that stores records traditionally recorded in paper documents.

A video is capable of being manipulated or destroyed, but only in the same way that a fish is capable of being cut up, altered, manipulated, or destroyed. The video in this case, like the fish in *Yates*, was itself the underlying crime. The Supreme Court indicated that the term "tangible object" was intended to refer to objects that themselves, while not records, are used to store documents and records (such as a computer hard drive). *Yates*, 135 S.Ct. at 1088-89. At least in this case, the videos in question did not store anything that can be considered a document or record. Sex tapes, quite simply, do not contain information traditionally recorded in paper documents akin to financial records. Nor is a video, at least in this case, an object which itself stores records. *See Id.* at 1083 (rejecting argument that §1519 should be extended "beyond the principal evil motivating its passage,"); *Id.* at 1085 (finding that by placing the statute among the "specialized provisions" of the obstruction scheme, Congress indicated that it "was not intended

to serve as a cross-the-board ban on the destruction of" evidence of every kind); *Id*. at 1084 (Statute placed "with specialized provisions expressly aimed at corporate fraud and financial audits"); *Id*. at 1089-90 (J. Alito's concurrence) (finding statute is directed towards "file keeping"). Video tapes in this case are not objects connected in any way to financial fraud or financial audits or documentary file keeping, to which §1519 was meant to apply.

    The undersigned was not able to find many cases directly on point. Two Seventh Circuit cases appear to uphold the conviction of defendants for violating §1519 by destroying media evidence of child pornography. *See United States v. Keith*, 440 Fed. Appx. 503 (7th Cir. 2011) (unreported); *United States v. Wortman*, 488 F.3d 752 (7th Cir. 2007). Both, however, were decided **prior to** *Yates*, and neither actually involves a challenge based on whether a video depicting a sex act constitutes a qualifying tangible object under §1519. *Id*. Hence, after *Yates*, these cases cannot help the government.

    Unlike other obstruction of justice statutes, §1519 does not require that an act be material to an actual, ongoing, or imminent federal investigation. Federal, civil, criminal, and regulatory law is a ubiquitous aspect of nearly every part of modern life. It is difficult to imagine an object that could not, at least in the hypothetical, *relate* to a matter within the jurisdiction of some federal agency. Similarly, videos are becoming more and more part and parcel of modern life. Allowing the federal government to criminally prosecute anyone who destroys a video that may be *potentially* relevant to a federal investigation would have the effect of greatly expanding the government's power. The Supreme Court explicitly held that §1519 was not intended as a broad provision criminalizing the spoliation of evidence. *Yates*, 135 S. Ct. at 1083 ("If Congress indeed meant to make §1519 an all-encompassing ban on the spoliation of evidence, as the dissent believes Congress did, one would have expected a clearer indication of that intent.").

Simply put, a video is more like a fish than it is like a spreadsheet or a report. Child pornography is horrible and criminal. However, child pornography itself, is not the type of "tangible object" that contains records or documents related to financial crimes or file keeping, which is what §1519 was explicitly passed to address. Such videos are not something in which a financial entry can be made as required by §1519 and *Yates*. A video may contain evidence of a crime, but so too can a car or a body or a fish, none of which constitute a "tangible object" within the meaning of §1519. *McRae*, 795 F.3d at 477-78. In finding that a fish is not a "tangible object" under §1519, the Supreme Court obviated the need to engage in the more existential theorizing as to the outer boundaries of what constitutes "information." An object may memorialize evidence of a crime without itself falling under §1519's tangible object provision. To be criminalized by §1519, the object must be of the type that would normally store the kinds of financial records, documents, and entries that motivated §1519's passage. The tangible object provision in §1519 refers to objects that contain records or documents—objects into which financial entries can be made. An alleged child pornography video is simply not such an object. Accordingly, Count Five must be dismissed.

**B. Influencing Witnesses To Provide False Information To Law Enforcement Or False Testimony To A State Court is Not Falsification Or Destruction Of An Object, Record, or Document Within the meaning Of §1519.**

Paragraph 7 of Count Five alleges that, in varying forms, Mr. McDavid "agreed to… attempt to persuade other individuals…. To falsify and make a false entry in a record, document, and tangible object related to Kelly's sexual contact and sexual acts with minors…". R.1 at 9. The indictment lists the following specific examples:

a. "…Minor 1 falsified and caused a false entry to be made in a police report, when Minor 1 denied to law enforcement officers that Kelly engaged in sexual relationship with Minor 1"

b. "…McDavid instructed minor 1's father to provide knowingly false testimony to Cook County grand jury investigating KELLY'S sexual relationship with Minor 1…. instructed Minor 1's father [to]falsely den[y] to the grand jurors that Video 1 depicted KELLY and Minor 1, thus creating a false record…."

c. "…Minor 1 falsely denied to the grand jurors… thus creating a false record and a false entry in a record, document and tangible object"

d. "…KELLY attempted to persuade Minor 5 to provide knowingly false testimony to the Cook County grand jury…"

e. "…McDavid directed that Minor 2 meet with a lawyer and that minor 2 falsely deny that Minor 2 and Kelly ever engaged in sexual acts together with Minor 1 and Minor 2…. As Kelly and McDavid intended, a false record, comment, and tangible object was prepared based upon Minor 2's false statements."

R.1 at 10-11. In summary Paragraph 7 alleges that Mr. Kelly and Mr. McDavid took steps to convince others to lie to law enforcement or to the grand jury. The logic appears to be that Mr. Kelly and Mr. McDavid must have known that those lies would be memorialized in some way, and that they, therefore, knew that a record or document would be created. As an initial point, it is unclear in Paragraph b what record might possibly be created. But putting that aside, this logic stretches §1519 light years beyond its intended scope.

A police report may well constitute a record within the meaning of §1519. *See, e.g., United States v. Moyer,* 674 F.3d 192 (3d Cir.2012); *United States v. Hunt,* 526 F.3d 739, 745 (11th Cir. 2008); *United States v. Lanham,* 617 F.3d 873, 876-77 (6th Cir. 2010). These cases involve officers who authored the report themselves, not individuals who provided false information to an officer who might later make a report. The undersigned has not found a single case wherein encouraging another person to provide false information to a law enforcement officer, who would then possibly write a report, has been charged under §1519.

Furthermore, the evidence plainly indicates that no false entry was actually made in any report or document. Generally, police reports detailing what a witness says do not certify that the claims made by the witness are true, but rather, document the simple fact that these were the

9

statements that the witnesses made. Nor does a grand jury transcript certify that the facts contained therein are true. It only certifies that the witness said the things contained in the transcript. A grand jury transcript is created by the court reporter. The court reporter is not indicating that the statements of the witness contained therein are true. They indicate only that the transcript contains an accurate record of what the witness said. The transcript is the record. There may have been false grand jury testimony as the government alleges, but it does not follow that anyone *falsified the record* of the grand jury testimony. There is no doubt that the grand jury transcript was an entirely accurate record of what the witness said. Hence, no false record or false entry was made at all. The record in question (the grand jury transcript) accurately reflected that which is was supposed to reflect—the statements made by the witnesses.

With respect to police reports, in which an officer says that something happened, which he knows did not happen, he is making a false record. Such officers are recording as true something that is not. *See, e.g., Moyer*, 674 F.3d at 207 (affirming §1519 conviction of a police officer because evidence supported that he "*knew* the information in the report…was false.") (emphasis original); *see also Hunt*, 526 F.3d at 744-45 (upholding a §1519 conviction against a sufficiency of evidence challenge because the evidence showed that the police officer knew he made falsified entries in a use of force report). When a police officer documents a statement from a witness, he is simply recording what someone else said. His report is accurate even if the statement is not. In the police reports in this case, there is no evidence than any officer made a false entry. Section 1519 applies to instances where false entries are intentionally made in records, not when people choose to lie to record keepers. The records in question here (the police reports), just like the grand jury transcripts, accurately reflected that which they were supposed to reflect—the statements made by the witnesses. In this case, there are no false entries

made in records by either the police or the court reporter. This renders these documents outside the ambit of §1519.

Nor has the undersigned found a single case where encouraging a person to lie to the grand jury has been charged under §1519. Extending the scope of §1519 to include intimidating another into testifying falsely would render §1512 superfluous as both obstruction statutes would cover the exact same conduct. *See Marx v. General Revenue Corp.*, 568 U.S. 371, 388 (2013) ("the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme"); *see also* 18 U.S.C. § 1512 (criminalizing pressuring witnesses to testify falsely before a grand jury). Hence, §1519 must be interpreted not to criminalize that which is explicitly covered by §1512.

Intimidating or pressuring another to testify falsely before a grand jury or to make false statements to a police officer simply cannot be prohibited conduct under §1519, which criminalizes the intentional making of false records. Thus, again, Count Five must be dismissed.

## II. INDICTMENT FAILS TO ALLEGE REQUISITE *MENS REA*.

The defendants need not be aware of an ongoing or imminent federal investigation to be guilty under §1519. However, at the very least, they must act "in contemplation" of a federal investigation at the time of the alleged acts of record destruction or false document making. For example, in *United States v. Reeves*, the district court overturned the conviction of an oyster harvester who provided false documents to a state agency. The oyster harvester had no reason to know that the documents would be provided to or had been requested by the FDA. 84 F. Supp. 3d 375, 406 (D.N.J. 2015) ("The FDA is not the New Jersey Department of Health … The government must prove that Bailey had the intent to obstruct or impede an FDA program (in contrast to a state program.)".

In *United States v. Craig*, the defendant provided a false document to a state prosecutor regarding a murder. 3 F. Supp. 3d 756 (E.D. Ark. 2014). Later, at federal investigators' request, she provided the same document to the federal government. *Id*. The district court dismissed the §1519 charges because the false document was not created in contemplation of a federal matter, but rather in contemplation of the state criminal investigation. The court reasoned that, at the time of the creation, the defendant had no reason to believe that any federal investigation would ever occur.

There have been several cases, however, where the appellate courts have upheld the convictions of police officers who falsify police reports. In those cases, courts have upheld those convictions, in part, because police officers are generally aware that the federal government has the power to investigate civil rights abuses and other police misconduct. *See, e.g.*, *Moyer*, 674 F.3d at 214 ("Furthermore, the jury also heard sufficient evidence to conclude that [the defendant] *knew* his actions were unlawful; as a certified law enforcement officer, [the defendant] received training that made him aware that, 'at least in a general sense,' obstructing a criminal investigation by lying to a federal law enforcement officer is unlawful").

In this case the State's investigation into Mr. Kelly began in 2002 and terminated with his acquittal in 2008. R.1. There is no evidence that Mr. Kelly or Mr. McDavid had any reason to contemplate that the federal government would begin an investigation or even that they could begin an investigation into Mr. Kelly's conduct. Furthermore, there is no evidence that they intended any false statements to be transferred to any federal agents. According to the indictment, they were motivated solely by the desire to impact a state grand jury investigation. Consequently, they were not acting in contemplation of a federal investigation and §1519 does not apply to them.

### III.    THE GOVERNMENT FAILED TO ESTABLISH A QUALIFYING OVERT ACT DONE IN FURTHERANCE OF THE CONSPIRACY THAT OCCURRED AFTER THE STATUTE OF LIMITATIONS RAN.

Prosecution for conspiracy is subject to a five-year statute of limitations. 18 U.S.C. §3282. In order to convict defendants, the government must allege and prove, not only that the purpose of the conspiracy continued within the period of the statute of limitations, but also that an overt act occurred within the statute of limitations. *Grunewald*, 353 US at 396-97; *United States v. Yashar*, 166 F.3d 873, 875 (7th Cir. 1999). The "crucial question" is the scope of the conspiratorial agreement. *Grunewald*, 353 U.S. at 397; *United States v. Nowak*, 448 F.2d 134, 139 (7th Cir. 1971) ("The duration of a conspiracy depends upon the scope of the agreement entered into by its members.").

"Under the general conspiracy statute, an overt act is defined as '*any* act to effect the object of the conspiracy.' 'An overt act need not be a completed offense or the ultimate goal of the conspiracy ... [it] need only be an action taken in furtherance of the conspiracy by one or more of the conspirators.'" *United States v. Hickok*, 77 F.3d 992, 1005–06 (7th Cir. 1996) (*quoting*, 18 U.S.C. §371, *United States v. Murzyn,* 631 F.2d 525, 534 (7th Cir. 1980)).

An overt act is one that is within the scope of the conspiracy and advances the goal of the conspiracy. *Hickok*, 77 F.3d at 1005–06.  Absent an overt act to further the conspiracy, the continuing results of a conspiracy are not sufficient to extend a conspiracy into the applicable statute of limitations. *Fiswick v United States*, 329 U.S. 211, 216-17 (1946).  A conspiracy ends when its central criminal purpose has been accomplished. *United States v. McKinney*, 954 F.2d 471, 475 (7th Cir. 1992) (citing, *Krulewitch v. United States,* 336 U.S. 440, 442 (1949); *Grunewald*, 353 U.S. at 399–406  (1957); *United States v. Silverstein,* 737 F.2d 864, 867 (10th Cir. 1984)). Simply discussing a criminal act or a past criminal conspiracy does not

constitute an act in furtherance extending the statute of limitations. *McKinney*, 954 F.2d at 475

(Rejecting argument that discussing the murder with other members of criminal organization

constitutes an overt act because the charged conspiracy was limited to conspiracy to commit

murder: "If the government had charged a conspiracy to run the Aryan Brotherhood as a

racketeering enterprise through a series of murders, or some other conspiracy that had ends

beyond [the defendant's] murder, the government's argument would have merit. But the

government charged only a conspiracy to murder [the defendant]; that purpose was

accomplished…" and the conspiracy could not be extended into the statute of limitations).

Acts of concealment are not sufficient to extend the scope of a conspiracy. *Nowak*, 448

F.2d at 139-40.  Nor are continuing effects of a conspiracy sufficient to extend its scope. *United*

*States v Doherty*, 867 F.2d 47, 62 (1st Cir. 1989) (conspiracy to steal advance copies of civil

service examination and sell them to police officers to obtain promotions was not extended by

receipt of increased salary payments due to the ill-gotten promotions).

**A.  Conspiracy terminated prior to July 11, 2014.**

In this case, the government charged the defendants with conspiracy to violate §1519

through obtaining and covering up videos, and through the creation of false records (i.e. state

grand jury transcripts and state police reports). R.1. That purpose was achieved (1) when those

records were created or (2) when the videos were obtained. Therefore, the conspiracy could not

be extended into the statute of limitations because purpose of the conspiracy had already been

achieved.

For example, in *United States v Davis*, the Fifth Circuit reversed the conviction for

conspiracy, under 18 U.S.C. §371, to violate 18 U.S.C. §1001 by agreeing to make false

statements to the Department of Labor. 533 F.2d 921 (5th Cir. 1976).  The Court found that the

only chargeable purpose of the conspiracy was to make false statements. Those statements were not made within the five-year statute of limitations. The ultimate object of the conspiracy alleged in the indictment was to secure payments from contracts from the Department of Labor – many of which were made within the statute of limitations. However, the *criminal* agreement was to make false statements. After the false statements were made, the conspiracy could not continue.

The fact that what constitutes an overt act is limited by the scope of the charged conspiracy is highlighted by the Seventh Circuit's decision in *Nowak*, 448 F.2d 134. In that case, the defendants were charged with a single conspiracy, under §371, to engage in various forms of obstruction of justice in addition to violation of §§1001, 1006 and 1008 as well as §657 (embezzlement from a federally insured institution). *Id. at* 139. ("The indictment charged, and the Government proved, a broad and continuing conspiracy to misapply the funds of Service and to make false and fraudulent statements to an agency of the United States."). The false statements were made outside the statute of limitations. The falsely obtained payments and proceeds obtained were received within the statute of limitations. The Seventh Circuit found that, in that context, "[t]here was sufficient evidence from which the jury could infer that a plot to deceive the government existed" into the statute of limitations. *Id.* The Seventh Circuit noted that it was "the *second* aspect of the conspiracy" (the conspiracy to embezzle) that extended the agreement into the statute of limitations. *Id*. ("The second aspect of the conspiracy was not simply an agreement to conceal the misapplication of Service's assets; it involved a continuing agreement to commit independent criminal acts by giving false answers to questions by federal regulatory examiners concerning Service's use of brokered accounts.").

As was the case in *Davis*, the government in Mr. McDavid's case did not charge a broad conspiracy to deceive through various means of obstruction, nor did the charged conspiracy involve any other criminal aims outside of obstruction. Rather, the government charged conspiracy to specifically violate §1519. Count Five of the indictment in this case indicates that the grand jury investigation ended on June 5, 2002 with the grand jury indictment of Mr. Kelly for child pornography relating to Video 1 and Minor 1. Mr. Kelly was acquitted on June 13, 2008. Video 1 was in the possession of state authorities at that time. The indictment alleges that, in 2001, Mr. McDavid first learned that videos depicting Kelly engaging in sexual contact with minors were missing from Kelly's collection of videos. R.1 at 8. The indictment alleges that, between 2001 and 2009 (prior to the five-year statute of limitations period), Mr. Kelly and Mr. McDavid caused others to be paid for obtaining the videos. R.1 at 8. The indictment alleges that Mr. Kelly and Mr. McDavid induced others to provide false statements to law enforcement or state courts. The last such act occurred in 2007 (prior to the five-year statute of limitations period). R.1 at 11-13.

The indictment alleges that payments to Minor 1 occurred into 2015. R1 at 11-13. But there is no indication of any alleged false statements or false documents being created after 2009. The creation of false documents or destruction of business records is the only conduct criminalized by §1519. Making payments to a person who already caused false documents to be created is not criminalized by §1519. Therefore, the *charged* conspiracy to violate §1519 does not extend into the statute of limitations because of these payments. Just as in *Davis*, the purported object of the conspiracy had been achieved prior to these payments being made.

The specific agreement charged by the government was to violate §1519 by making false statements to the police and in the grand jury. The false statements in question were already

procured or obtained by 2008 in Cook County. Any acts to conceal Mr. Kelly's conduct from the general public or even from state and federal investigative authorities after 2008 might have been directed at the same general goal that the conspiracy sought to obtain. But, if there were no false records to be made because the grand jury was already concluded, such acts do not advance the charged conspiracy to violate §1519 specifically. That conduct, while perhaps relevant to other charges in the indictment, is outside the scope of the conspiracy charged in Count Five. If payments were made to prevent Minor 1 from any future cooperation with law enforcement, that is simply an act of concealment, which is insufficient to extend the statute of limitations. *United States v Nowak*, 448 F.2d 134 (7th Cir. 1971). Section 1519 charges the creation of a false document, not the failure to create a true one. No false documents were created after 2008. The payments were not made in contemplation of any new false statements or documents. And the government has not alleged as much. Thus, the payments cannot extend the conspiracy into the statute of limitations.

The indictment specifies only four overt acts committed after July 11, 2014.

1.  "In approximately September 2014, Kelly caused a wire transfer in the amount of $80,000 to be paid to McDavid through his firm"
2. "In approximately October 2014 Kelly caused a RSK enterprise LLC check to be issued to Minor 1 payable in the amount of $1,150"
3. "In approximately October 2015 Kelly caused a wire payment to be made … to Minor 1 … in the amount of $1,150."
4. "In approximately December 2015, Kelly caused a wire payment in the amount of $100,000 to be made … to agents of McDavid on McDavid's behalf."

R.1. None of these acts could possibly have been taken in furtherance of the conspiracy charged in Count Five. The payments to Mr. McDavid, which were noted in the indictment, could not have been in contemplation of the creation of any false or fraudulent document as no false or fraudulent document was created at or after the time of those payments. The government's

indictment does not indicate, even in the hypothetical, what prospective false documents the payments were supposed to be aimed at obtaining. First, as the indictment notes, Mr. McDavid was employed by Mr. Kelly long before Mr. McDavid had any reason to suspect that there may or may not be an investigation into Mr. Kelly's sexual misconduct. In addition, Mr. McDavid's employment was not limited to the criminal conspiracy. Mr. McDavid was Mr. Kelly's business manager. R.1 at 5. The indictment alleges that "As a manager for KELLY, MCDAVID was involved in providing services to KELLY, which services were in part intended to protect KELLY's image, reputation, and assets in the face of actual and potential criminal and civil actions involving individuals who were victims of sexual misconduct by KELLY." R. 1 at 5. While perhaps not the most laudable of possible occupations, protecting a celebrity's image and reputation does not, at least without more, constitute a criminal conspiracy. And payments made to Mr. McDavid for the purpose of protecting Mr. Kelly are not overt acts in support of the charged conspiracy to violate §1519.

Second, and perhaps more importantly, at the time the government alleges these acts occurred, the false documents and statements about which the government complains in the indictment had already been obtained and/or created. In that sense, this case is indeed directly analogous to *Davis* from the Fifth Circuit. The government charged a conspiracy to violate a single obstruction of justice statute aimed at the making of false documents and record manipulation and destruction. The government does not allege that any acts of document destruction or false record creation were actually sought by the defendants within the applicable statute of limitations period.

Nor could the payments to Minor 1 be in furtherance of the charged conspiracy. The payments could not have been made to conceal Video 1 as noted in the indictment. The state

already had access to Video 1. It was played during Mr. Kelly's trial in Cook County. An act must be in furtherance of the conspiracy in order to extend the conspiracy into the statute of limitations, *i.e.*, it must advance the criminal agreement of the conspiracy in some way. The payment could not advance the concealment of the video referenced in the indictment, because the video had already been unearthed. The payment could not advance the creation of inaccurate police reports or grand jury transcripts because those reports and transcripts had already been prepared and completed. If anything, the checks allegedly written to Minor 1's family can only be acts of concealment. That is not sufficient to extend the scope of a conspiracy that has otherwise come to an end. Without any overt acts within the statute of limitations, which could actually extend the conspiracy, Count Five must be dismissed.

WHEREFORE, this Honorable Court must dismiss Count 5 of the indictment, as it relates to Mr. McDavid, because the government's attempt to stretch, not only the scope of §1519, but also the statute of limitations, far beyond their intended reach, cannot succeed under the law.

<div style="margin-left: 3em;">

Respectfully submitted,

/s/ Beau B. Brindley_____
*An Attorney for Derrel McDavid*

/s/ Vadim A. Glozman_____
*An Attorney for Derrel McDavid*

/s/ Blair T. Westover _____
*An Attorney for Derrel McDavid*

</div>

Beau B. Brindley
Blair T. Westover
LAW OFFICES OF BEAU B. BRINDLEY
53 W. Jackson Blvd., Suite 1410
Chicago, IL 60604
(312) 765-8878

Vadim A. Glozman
VADIM A. GLOZMAN LTD.
53 W. Jackson Blvd., Suite 1410
Chicago, IL 60604
(847) 477-5101

## **CERTIFICATE OF SERVICE**

I, Vadim A. Glozman, an attorney for Defendant Derrel McDavid, hereby certify that on this, the 21st day of October, 2019, I filed the above-described document on the CM-ECF system of the United States District Court for the Northern District of Illinois, which constitutes service of the same.

Respectfully submitted,

*/s/ Vadim A. Glozman*

VADIM A. GLOZMAN LTD.
53 W. Jackson Blvd., Suite 1410
Chicago, IL 60604
(312) 726-9015