IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 CR 567 |
| v. ) | |
| ) | Hon. Harry D. Leinenweber |
| DERREL MCDAVID, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT DERREL MCDAVID'S RESPONSE TO GOVERNMENT'S
MOTION TO CONTINUE TRIAL**

Now comes the defendant, Derrel McDavid, by and through his undersigned attorneys, and respectfully submits the following response to the government's motion to continue trial (R. 136):

1. Much of the government's concerns in asking to continue this jury trial relate to Robert Kelly and would be cured if Mr. David were allowed to proceed to trial separately. While Mr. McDavid is sympathetic to Kelly's attorneys being unable to meet with him in preparation for trial because of the suspended visitation at the MCC, as well as concerns of Kelly's ability to read and write, those concern will not dissipate any time soon. As Judge Durkin recently put it, "the best information before the Court at present suggests that the coronavirus is here to stay." *See United States v. Lattas*, 13 CR 463, Dkt No. 361. But in the interest of fairness to the accused seeking trial, continuances cannot go on in perpetuity. Yet, this seems to be what the government is suggesting. None of the concerns

highlighted in the governments motion will be resolved any time soon. But that cannot mean that Mr. McDavid is left with no hope of a definite trial date.

2. To that end, it does not seem to follow that counsel for Mr. Kelly is unable to prepare for trial in the present matter on October 13, 2020, but would be able to do so two weeks sooner in New York given the same coronavirus hurdles. This is even more concerning, not only because the present matter was indicted prior to the New York matter, but was scheduled for trial on October 13, 2020 well before the New York matter was scheduled for trial September 29, 2020. Given that the coronavirus hurdles that Kelly's counsel has, special accommodations to meet with their client would be more easily attainable here than at a courthouse in another state. And because of New York's reluctance to allow Illinois residents to visit their state, counsel for Kelly would have to put their practices on hold another two weeks as they would have to quarantine upon their arrival there, which has not been part of the equation for Kelly's counsel demanding to go to trial in New York first. *See* https://www.governor.ny.gov/news/governor-cuomo-announces-individuals-traveling-new-york-additional-state-will-be-required (last accessed August 10, 2020). It is, in reality, more feasible to go to trial here than in New York. Whatever accommodations counsel needs can be worked out. And the concerns regarding jury venires and witnesses are just as true in New York as they are here.

3. Since being indicted, Mr. McDavid has suffered loss of liberty, reputation, and economic perspectives. He was ready to go to trial in April 2020, but agreed to continue the matter to October 13, 2020 upon motion by Kelly (and

agreement from government). It is plainly unfair for Mr. McDavid to have to delay his right to a jury trial again simply because his codefendant, for one reason or another, seems to prefer to try the New York case first. It is simply not fair to Mr. McDavid for this trial to get continued indefinitely because the government and counsel for Mr. Kelly believe it will be a challenge to try. That challenge needs to be met and can be met. Recent history has shown that it is possible to safely and effectively conduct a jury to as things stand today.

4. Following the first post-pandemic jury trial held in the Northern District of Illinois, jurors had nothing but praise for the safety protocols put in place. *See*, https://chicago.suntimes.com/crime/2020/8/6/21357884/chicagos-first-jury-trial-pandemic-ends-guilty-verdict-praise-jurors (last accessed August 10, 2020). As one juror recalled, "I felt like they were extremely thorough[.] I think they walked through the juror experience from the very beginning — from where you park. I can tell that they looked through the full process and did every checkpoint." *Id*. While other jurors had similar praise of the safety protocols put in place, the same juror stated that jury service is a "beautiful, beautiful thing, and it's nothing to get out of or try to avoid." *Id*. As part of these safety protocols, "[p]ublic seating [was] limited, and witnesses [were] asked to wipe down the witness stand when their testimony ends. Jurors [were] also given plastic bags filled with supplies." *Id*.

5. These same precautions would be taken at a trial for Mr. McDavid. The jury would be kept safe and the high-risk witnesses would be kept safe. Additionally, it is possible that some of the out-of-state or high-risk witnesses would not be

3

material to Mr. McDavid's defense. If the witnesses are not material, it may be possible to agree to have them testify via video. The government has simply kept silent about what witnesses they are inclined to call.

6. Unlike Kelly, Mr. McDavid is not a well-known celebrity. The length of the case will be much shorter if he is tried separately and a much smaller venire will be needed. There will be a less witnesses that will testify, less (if any) victims of sexual abuse will need to testify, and less challenges to setting up a courtroom to accommodate for three defendants. If, however, all three defendants were to proceed to trial, the Ceremonial Courtroom, given its size, would be an available option that could be utilized in an effort to comply with social distancing requirements.

7. In regard to the high risk witnesses that may have to testify at trial, it seems ironic that the underlying issues outlined in the sealed filing are grounds for a continuance, yet in the scores of motions for compassionate release that have been filed in recent months, the government has objected to similar, if not more severe, underlying health conditions as compelling reasons for release. Minor 1 does not have an underlying condition that makes her high risk. Neither do Minor 4 or 5. The government has not indicated what, if any of these witnesses, would have to testify in a trial for Mr. McDavid. As with the remaining potential witness, being over a certain age with no underlying conditions does not necessarily make an individual high risk. Nor has the government indicated the reluctance of any of these witnesses to testify or explored the possibility of testimony via video.

8. Given the uncertain future of this pandemic, defendants who are facing charges should not be left in limbo if it is their desire to have the case conclude sooner

4

rather than later. Mr. McDavid has now twice indicated his desire to be tried and have this chapter of his life put behind him. The interest of justice should weigh in favor of the resolution of matters where the defendant wants to see them through to conclusion rather than in favor of the government's desire to have one trial instead of two. It is already proven that the Northern District of Illinois has to ability to "to protect the health and safety of defendants, defense counsel, prosecutors, court staff, jurors, and the public," and has the ability to protect witnesses. The notion that Mr. Kelly should go to trial in New York prior to Chicago (*See* Title 18, United States Code, Section 3161) is dubious and completely irrelevant to Mr. McDavid's right to a fair and speedy trial.

9. Mr. McDavid is not Robert Kelly. He is not depicted on any videos involving minors. He is not facing multiple cases in multiple jurisdictions. He is not identified by victim after victim as having engaged in conduct that draws the intense interest of the media. Yet, he continues to suffer delay and difficulty because of these problems posed by Mr. Kelly and his situation. For Mr. McDavid, that is neither fair nor just.

10. Mr. McDavid worked for Mr. Kelly as a business manager and he worked with Mr. Kelly's lawyers who endeavored to defend him in court. Mr. McDavid will prove that he simply did his job and committed no crime. He has been waiting to establish his innocence in open Court. Mr. McDavid has the right to count on the scheduled trial date as the avenue through which that innocence can finally established and this case for him finally completed. He has witnesses to call. He

5

has a robust defense planned. He is ready to present that defense and asks that this Court let him do so without delay. His life should not be placed on indefinite delay due to the unfortunate trials and tribulations of Kelly. Mr. McDavid opposes any government effort to move the October 13, 2020 trial date.

Wherefore, for the reasons stated above, Derrel McDavid objects to the continuance of the October 13, 2020 jury trial date and to the exclusion of time thereafter.

Respectfully submitted,

/s/ Beau B. Brindley
*An Attorney for Derrel McDavid*

/s/ Vadim A. Glozman
*An Attorney for Derrel McDavid*

Beau B. Brindley
LAW OFFICES OF BEAU B. BRINDLEY
53 W. Jackson Blvd., Suite 1410
Chicago, IL 60604
(312) 765-8878

Vadim A. Glozman
VADIM A. GLOZMAN LTD.
53 W. Jackson Blvd., Suite 1410
Chicago, IL 60604
(847) 477-5101

## CERTIFICATE OF SERVICE

I, Vadim A. Glozman, an attorney for Defendant Derrel McDavid, hereby certify that on this, the 11th day of August, 2020, I filed the above-described document on the CM-ECF system of the United States District Court for the Northern District of Illinois, which constitutes service of the same.

Respectfully submitted,

<i>/s/ Vadim A. Glozman</i>

VADIM A. GLOZMAN LTD.
53 W. Jackson Blvd., Suite 1410
Chicago, IL 60604
(312) 726-9015