UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 19 CR 567 |
| vs. | ) | |
| | ) | Hon. Harry D. Leinenweber |
| | ) | |
| DERREL MCDAVID | ) | |

**MOTION TO COMPEL DISCLOSURE OR,
IN THE ALTERNATIVE, EXLCUDE**

COMES NOW Defendant Derrel McDavid, by and through his attorneys Beau B. Brindley and Vadim A. Glozman, and hereby moves this Honorable Court to compel complete discovery regarding the chain of custody surrounding Video 1, which is purported to be a video received from the Cook County State's Attorney's Office, and which is purported to have been the video received from the Chicago Sun Times on February 4, 2002. In support, he states as follows:

**Introduction**

The 2008 trial of Robert Kelly in Cook County was replete with dishonesty, extortionate demands, admittedly lying witnesses, and a failure to truthfully identify video evidence used in that case, which damaged the integrity of the entire trial proceeding. During the 2008 trial, the Cook County State's Attorney's Office provided to the defense expert what it told the jury, through stipulation, was an accurate and exact copy of the VHS video received by the Cook County State's Attorney's Office from the Chicago Sun Times.[1]  However, it turned out that this

---

[1] The source of this video, who sent it to the Sun Times, remains anonymous. There has never been any explanation of who, or how many people, were involved in the transmission of this video to Jim

stipulation to the jury was false.[2] The copy provided to the defense expert was not an exact copy—some material from the original was not present on the copy given to the defense expert. Therefore, the defense expert's showing of video segments to the jury, which he was told (by the State) came from an exact copy of the original, turned out to be from some incomplete and inaccurate version. *See People of the State of Illinois v. Kelly*, June 10, 2008 Jury Trial Transcript., Pgs. 158-169. The 2008 jury was ultimately shown segments of two separate videos and falsely told by the State that what they were seeing was all coming from identical copies of the original. In other words, false affirmations were made to the jury by the State about what video they were seeing. When confronted by the fact that the jury was given false information by the State, Judge Vincent Gaughn stated as follows: "This is the thing that's in the barrel. This is the rotten tomato in the barrel and I want some explanation about it. This is not true." *Id.* at Pg. 161.

It is now apparent that the "rotten tomato", which befouled the barrel back in 2008, continues to taint the evidence that the government now hopes to present to the jury at the upcoming federal trial.

### Insufficient Chain of Custody and Authentication

On August 5, 2022, counsel for Derrel McDavid went to the Homeland Security office in Lombard, Illinois to view Video 1, which the government has purported to be the video that was at issue in the 2008 trial, and which they intend

---

DeRogatis at the Chicago Sun Times. Nor has there ever been any explanation of how many times the video had been copied before the apparent copy-of-a-copy reached Jim DeRogatis at the Sun Times.
[2] *See People of the State of Illinois v. Kelly*, June 10, 2008 Jury Trial Transcript., Pgs. 158-163.

to show the jury in the instant matter. Prior to going to view this video, both Mr. Glozman and Mr. Brindley independently advised the government that they wished to view any and all videos that were shown to the jury in 2008. The content of the video that was shown to the jury back in 2008, and which was provided to the defense back in 2008, surely had an impact on the mindset of the attorneys representing Mr. Kelly at the 2008 trial and on Mr. McDavid who was working with those attorneys as a member of the defense team. The undersigned could not have imagined that there would be a problem identifying the videos that were admitted into evidence as exhibits during the 2008 trial. The undersigned were wrong.

At the August 5, 2022 meeting, it became absolutely apparent that the government has no idea what video was actually admitted into evidence and shown to the jury in 2008. They have multiple CD's that they contend are copies of the video that they got from the Cook County State's Attorney's Office. However, they have no idea whether the video they have was shown to the jury and admitted as Exhibit 1 at the 2008 trial. They have no idea whether the video they have is the inaccurate copy of that video was referenced as Exhibit 78 at the trial, shown to the jury, and provided to the defense expert – the "rotten tomato." To that end, the government could not tell Mr. McDavid's attorneys what happened to the State's exhibits that were admitted at trial in 2008. Nor could they tell them whether accurate copies of those exhibits were actually turned over to the government in this case or not. The agents who made the copies were readily willing to admit that they have no idea which of these videos, if any, was actually the same video that the jury

3

and defense counsel saw back in 2008 at the trial. That means that there is, based on the current chain of custody, no way to determine what video Mr. McDavid and the defense team could have actually seen back in 2008. Nor is there any way to determine if the video the government wants to admit now was actually the same video that was shown to witnesses in the 2002 grand jury, about which those witnesses are expected to testify at Mr. McDavid's upcoming trial.

It is impossible to discern how the government could claim a complete chain of custody has been maintained when they do not have a clue what happened to the videos that were actually the exhibits in the 2008 trial, and they do not have any way to determine whether the videos they have are indeed the same ones that were available to the parties back in 2008. The matter was made even more absurd when the agents showed the defense team a VHS videotape in an evidence bag, which they said was the video that came from the Cook County State's Attorney's Office. However, a quick review of the label on the VHS tape said it was a "COPY." Yet, neither the agents who are handling this case for the government nor government counsel knows: (1) what exactly that tape is a copy of; (2) who in Cook County made the copy; (3) whether the content of that tape was ever accessible to the parties in between 2002 and 2008 or to the 2008 jury; and (4) whether it is actually a copy of the tape provided to the State by Jim DeRogatis in 2002. They have no earthly idea whether the video they have is really the same one that was used in 2002 to show the grand jury witnesses. They want to show this video they have now (Video 1) to witnesses and ask them if they made false statements about

4

ut to the grand jury back in 2002, but to do that they have to be able to establish that what they have now is the same recording these witnesses saw back in 2002. The government cannot do that. This was apparent to the undersigned based on the befuddlement that defense counsel encountered when simply asking to see different versions of the tape that were referenced and admitted into evidence at the 2008 trial. It appears the government does not know whether what they have is what was shown to these 2002 witnesses or not, whether what they have was shown to the 2008 jury, or whether what they have was made available to the 2002 defense team and their expert.

This is not an acceptable state of affairs in a case in which the obstruction of justice conspiracy surrounds issues related to this recording that was at the center of the 2008 trial and the 2002 grand jury. The only recording that is relevant to the obstruction of justice conspiracy is the video that was received by the Sun Times in February of 2002, provided to the State, and, presumably, shown to grand jury witnesses in 2002, and (again presumably) shown to the jury at the 2008 trial. To establish a complete chain of custody such that we can have confidence that the video they intend to show is the same video that was available to the defense (and thereby to Mr. McDavid by extension) in 2008, and shown to the grand jury witnesses they want to call in this case, the government must be able to prove that the video they have is a copy of the actual video received by the Sun Times in February of 2002, turned over to the State in 2002, shown to grand jury witnesses

5

in 2002, made accessible to the defense prior to the 2008 trial, and shown to the jury at that trial. That recording is the one that is relevant to obstruction of justice.

An entire trial in 2008 was held over the question of whether that recording was authentic and unaltered. Yet, at present, the government cannot tell anyone what happened to that specific recording. They do not know if they have it. They do not know if it was copied or who copied it. They do not know if it even still exists. They presently cannot say whether the recording they have is the inaccurate and compressed recording that imbrued Judge Gaughn's trial in 2008, if it is the recording turned over to the State by the Sun Times, or if it is some other version that has surfaced over the years. If they cannot tell the Court or the defense even that much, then they cannot establish that the recording they wish to play to the jury is authentic or that a proper chain of custody has been established.

If the government intends to show a video and claim it is the same Video 1 that was at issue in the 2008 trial, then Fed. R. Evid. 901 requires the government to present evidence authenticating that it is the same video. *United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012). To meet this burden, the government must establish that "a chain of custody demonstrating the tapes are in the same condition" or "testimony demonstrating the accuracy and trustworthiness of the tapes." *United States v. Collins*, 715 F.3d 1032, 1035 (7th Cir. 2013). But thus far the government has fallen well short—the agents explicitly stated they *did not* know which of their copies was shown at 2008 trial or 2002 grand jury or provided to the defense. Worse, the agents cannot verify that the tapes have not been altered

6

or are in the same condition. *See Griffin v. Bell*, 694 F.3d 817, 826-27 (7th Cir. 2012). In *Griffin*, a video recording was inadmissible under Rule 901 because the proponent could not "verify" that the video was authentic and "could not say how the video was made, or whether it had ever been altered." *Id*. Here, we know that there was, at the very least, one altered version of the tape created by the State: the one that was provided to the defense prior to the 2008 trial, and which became the "rotten tomato" in Judge Gaughn's trial. Without additional discovery to establish authenticity and chain of custody, the government cannot verify that they have the same tape shown in the earlier proceedings or that their tapes are in the same condition.[3]

It appears that the government is preparing to sully the record in this case with the same tainted concoction that resulted from the "rotten tomato" so poignantly described by Judge Gaughn 14 years ago. This Court cannot let that happen. To admit this recording into evidence, the government must provide discovery establishing: (1) a chain of custody leading from the government to the Cook County State's Attorney's Office to the Chicago Police Department to the hands of Jim DeRogatis at the Sun Times in February of 2002; (2) clear evidence indicating what happened to the inaccurate compressed copy of the video referenced in the 2008 trial so that we can be sure it will not be shown to the jury in this case; (3) clear evidence explaining how the government can prove that what they purport

---

[3] Because the contents of Video 1 is at issue, Fed. R. Evid. 1002 requires that the government produce and use the original recording. If it intends on claiming their video is a duplicate, it again falls well short of establishing that it is an accurate and authentic duplicate.

to show the jury is not the inaccurate compressed copy from the 2008 trial; (4) evidence showing that what they have in their possession is the accurate and unaltered version of the video provided by the Sun Times in 2002 rather than any other lesser or perhaps more enhanced version. This is not difficult. At least it should not be. All the government has to do is provide to the Court and the defense two separate video exhibits: one that is the very video obtained by the State from the Sun Times; and another that is the inaccurate compressed copy that falsely claimed to be an identical reproduction of the original. These exhibits were admitted at a trial. This should be within the ability of the United States Attorney's Office and it certainly is their obligation to do so.

     If the government cannot at least prove to this Court that they have the actual exhibits from the 2008 trial, then they should not be permitted to admit this recording into evidence. Trial and grand jury exhibits are received for the purpose of being maintained. The government is telling the defense they have no way to know what happened to the real exhibits admitted during the 2008 trial. That is unacceptable.

     The government intends to show to Video 1 to Minor 1 and ask her if she made false statements about that video to a Cook County grand jury. If they cannot even prove that the video they are showing her now is the same video that Cook County received from the Sun times back in 2002, and the same video she was asked about back before the 2002 grand jury, then their chain of custody is woefully

8

insufficient and this video must be excluded. Right now, they have not, and cannot, provide that proof to the defense.

In short, if the State has somehow lost the actual exhibits from the 2008 trial, and no one can prove that what the government has in its possession is actually the same video that was received by the State in 2002 and referenced with witnesses in the 2002 grand jury, then the government cannot be permitted to show it to the jury in this case and pretend that it is actually the same recording that was discussed from 2002 to 2008 during the pendency of Robert Kelly's Cook County case. The government needs to obtain the actual exhibits from the 2008 trial and from the 2002 grand jury so they can establish a complete chain of custody and prevent Judge Gaughn's apocryphal tomato from polluting the integrity of yet another judicial proceeding.

WHEREFORE, Defendant Derrel McDavid respectfully moves this Court to order disclosure of the items detailed above.

                                          Respectfully submitted,

                                          /s/ Beau B. Brindley
                                          *An Attorney for Derrel McDavid*

                                          /s/ Vadim A. Glozman
                                          *An Attorney for Derrel McDavid*

Beau B. Brindley
LAW OFFICES OF BEAU B. BRINDLEY
53 W. Jackson Blvd., Suite 1410
Chicago, IL 60604
(312) 765-8878

Vadim A. Glozman
LAW OFFICES OF VADIM A. GLOZMAN

9

53 W. Jackson Blvd., Suite 1128
Chicago, IL 60604
(312) 726-9015

10