UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 19 CR 567 |
| vs. | ) | |
| | ) | Hon. Harry D. Leinenweber |
| | ) | |
| DERREL MCDAVID | ) | |

**MOTION TO DISMISS THE INDICTMENT
FOR PREINDICTMENT DELAY**

COMES NOW Defendant Derrel McDavid, by and through his undersigned attorneys, Beau B. Brindley and Vadim A. Glozman, and pursuant to Fed. R. Crim. P. Rules 12 and 48 and the Due Process Clause of the Fifth Amendment of the United States Constitution, respectfully moves this Honorable Court to dismiss the indictment due to preindictment delay. In support, the following is offered:

**I.    Introduction**

The government has stretched this case well-beyond reasonable limits while attempting to bring an indictment against Mr. McDavid. It tries to criminalize events that allegedly occurred *decades* in the past. But, in the years since these events purportedly occurred, vital pieces of evidence have been lost or destroyed. Key witnesses that would have aided Mr. McDavid's defense have died. Worse, the government knew about these very same allegations when they allegedly occurred—20 years ago—and physically possessed some of the evidence that is now lost to time. Yet, it repeatedly declined to bring any charges for years and waited until the eleventh hour to bring a case after substantial pieces of evidence were already lost.

As a result, Mr. McDavid is deprived of his constitutional right to prepare a complete defense and his right to a fair trial.

As the law says: justice delayed is justice denied. That legal maxim is in full force here. The indictment must be dismissed because of inexcusable and unnecessary preindictment delay.

## II. Legal Standard

While the statute of limitations provides the "primary safeguard against … overly stale charges," it is not the only constitutional protection to a prompt trial and administration of justice. *United States v. Marion*, 404 U.S. 307, 322 (1971); *see also United States v. Henderson*, 337 F.3d 914, 920 (7th Cir. 2003); *see also United States v. Sabath*, 990 F. Supp. 1007 (N.D. Ill. 1998) (explaining that the statute of limitations does not "fully define defendants' preindictment rights[.]"). Indeed, the Due Process Clause forbids preindictment delays and "require[s] dismissal of the indictment" when the preindictment delay "caused substantial prejudice to the [defendant's] right to a fair trial." *Marion*, 404 U.S. at 324; *see also United States v. Spears*, 159 F.3d 1081, 1084 (7th Cir. 1998) (stating that the Due Process Clause assures "that the government does not subject a defendant to an oppressive delay."). In fact, the right to "prompt and fair" justice even predates the Magna Carta and is deeply ingrained in our criminal justice system because it is a "well-established fact that a trial conducted years after the alleged commission of an offense inevitably suffers from impaired fact finding." *Sabath*, 990 F. Supp. at 1020.

This Court must employ a two-step balancing test to determine if the preindictment delay violated Mr. McDavid's Due Process rights. *See Id.* at 1013-14; *United States v. Sowa*, 34 F.3d 447, 449-52 (7th Cir. 1994); *United States v. McMutuary*, 217 F.3d 477, 481-82 (7th Cir. 2000). First, the defendant must show that "the prosecutorial delay caused actual and substantial prejudice to the defendant's right to a fair trial." *Henderson*, 337 F.3d at 920. The defendant must show actual and substantial prejudice, not mere speculation. *McMutuary*, 217 F.3d at 481-82. After this, the burden shifts to the government to "come forward and provide reasons for the delay." *Sowa*, 34 F.3d at 450. This Court then balances the government's reasons against the prejudice suffered by the defendant to determine if the delay violated Due Process. *Id.*; *Henderson*, 337 F.3d at 920.

And the government does not have to act intentionally or in bad faith for this Court to find a Due Process violation. *Id.* If the prejudice to Mr. McDavid's right to a fair trial outweighs the government's reasons, it does not matter that the government acted intentionally, recklessly, or even negligently. *Id.*; *see also United States v. Williams*, 738 F.2d 172, 175 n.2 (7th Cir. 1984) (explaining that the government's "unintentional" delay may still require dismissing the indictment if the delay "is so detrimental to the defendant's case as to be patently unfair."); *Sabath*, 990 F. Supp. at 1018 (explaining that "the core holding of *Sowa* is that preindictment delay is determined by a balancing test—not a rigid set of fault."); *United States v. Lovasco*, 431 U.S. 783, 795 n.17 (1977) (noting that the government conceded that a "prosecutorial delay incurred in reckless disregard of the circumstances known to the

3

prosecution" would violate Due Process); *United States v. Ross*, 123 F.2d 1181, 1184-85 (9th Cir. 1997) (allowing preindictment delays based on negligent prosecutorial acts); *Howel v. Barker*, 904 F.2d 889, 895 (4th Cir. 1990) (allowing the same).

Finally, a defendant may establish the prejudice caused by the preindictment delay both before and during the trial. *See* Fed. R. Crim. P. 12(b)(3)(A)(ii) (allowing pretrial motions to dismiss for "preindictment delay"); *Marion*, 404 U.S. at 326 (stating that "events at trial may demonstrate actual prejudice" of preindictment delay). For example, in *United States v. Glist*, the district court took pretrial motions to dismiss for preindictment delay under advisement and ultimately terminated the trial once the prejudice became apparent. 594 F.2d 1374, 1377 (10th Cir. 1979). In addition, Rule 48 allows this Court to dismiss an indictment "if an unnecessary delay occurs" in presenting the case to the grand jury or bringing a defendant to trial. Fed. R. Crim. P. 48(b). While the Rule 48 standard "is not circumscribed by the Sixth Amendment," right to a speedy trial, "it is driven by the same general considerations." *United States v. Ward*, 211 F.3d 356, 361-62 (7th Cir. 2002).

### III. Argument

The government's delay in prosecuting this case is inexcusable. It has consistently stretched and twisted its allegations to try and bring a case against Mr. McDavid. In particular, the government has bent over backward trying to allege a factual basis for the obstruction of justice conspiracy—the centerpiece of their indictment—that was not barred by the statute of limitations.[1] Still, even under the

---

[1] Mr. McDavid still contends, as explained in his previous motions, that the charged conspiracy is barred by the statute of limitations, but he will not rehash those arguments here.

4

government's theory, it only managed to obtain the indictment with a handful of months remaining on the clock.

Nevertheless, the heart of the government's case concerns allegations that occurred *decades* ago. At its core, Count 5 alleges a conspiracy to create false documents and records in a DFCS investigation occurring in 2000 and a Cook County grand jury occurring in 2002—over 20 years prior to the start of this current trial. Dkt. 93, pgs. 10-11. The most recent false document was allegedly created in 2007, over 15 years ago.[2] *Id.*; *see also Doggett v. United States*, 505 U.S. 647, 652 (1992) (explaining that the prejudice presumed from a pretrial delay "intensifies over time."). And over the years, evidence—in the government's possession—has apparently been lost. Witnesses, who would have offered testimony supporting Mr. McDavid's defense, have died. The witnesses who will testify undoubtedly will have faded memory of these long past events. *See Barker v. Wingo*, 407 U.S. 514, 532 (1972) (explaining "there is prejudice" when witnesses can no longer "accurately recall events of the distant past" and this "loss of memory … is not always reflected in the record because what has been forgotten can rarely be shown.") As a result, Mr. McDavid has been stripped of using vital pieces of evidence and witnesses, leaving him with inadequate alternate means of preparing his defense. This cannot—and should not—be the case.

The Supreme Court has long held that a defendant is prejudiced by an excessive and unnecessary preindictment delay when he suffers the "loss of evidence

---

[2] Notably, four of the false documents and records were allegedly made even before the underlying obstruction offense, 18 U.S.C. 1519, was even enacted.

5

from death or disappearance of witnesses, destruction of documents, or failure of memory." *Marion*, 404 U.S. at 324. And this is precisely what Mr. McDavid suffers from here. Over time, the government has apparently lost the original version of Video 1, which is essential to Count 5. Mr. McDavid needs that actual video to point out the things on it that were shown to him before the 2008 trial, things which shaped his knowledge and his beliefs regarding the 2008 trial and 2002 grand jury on which the obstruction of justice charge focuses.

Further, there were defense documents and evidence held by Robert Kelly's attorneys from the prior state proceedings that have been destroyed in the years after his case ended. Once the seven years mandated for keeping files and records passed, documents critical to Mr. McDavid's defense were destroyed. These were documents establishing his relationship to the attorneys on whom he relied on for his beliefs and knowledge about this case. These documents include documentation regarding the obtainment of videos that the government now tries to falsely blame on Mr. McDavid.

Not only this, but numerous witnesses have died in the years in between the events giving rise to the charges and the trial in this case. *See United States v. Barket*, 530 F.2d 189, 196-77 (8th Cir. 1976) (finding actual prejudice when multiple key witnesses died during a four-year preindictment delay). One of the most critical witnesses—who will undoubtedly be mentioned throughout the trial—was Jack Palladino, an investigator. Palladino was present for critical events in this case. He was present for the obtainment of a videotape that the government now falsely claims was received by Mr. McDavid. Palladino could have established that Mr. McDavid

6

received no tape, that he was not present when the tape was handed over. But, because of the decades of delay, Palladino has died before this case was brought. Had it been brought in even a remotely timely manner, he would have been alive and able to testify.

Despite the government's claims in prior motions, the original version of Video 1 is essential to the obstruction conspiracy charged in Count 5.[3] As previously explained in prior motions, the charged false documents and records were created in response to the original version of Video 1 that the witnesses were shown in the 2002 grand jury. It is only the original version that matters here. For the jury to determine whether the defendants truly believed whatever videos they were allegedly shown had minors in them or not (which is critical to any evaluation of whether they obstructed justice), they must be shown the same version of the video that the witnesses and defendants could have viewed back in 2002. Only then can they fairly and accurately evaluate the reasonableness of the defendant's beliefs about what that video contained.

Likewise, the original videos Kelly's defense team used in the prior state proceedings to create reports analyzing the videos and suggesting that they could have been altered are also lost and destroyed. Those items on which Mr. McDavid based his knowledge and beliefs about the video recording at question in the 2002

---

[3] As this Court is aware, Video 1 has been the subject of one of Mr. McDavid's previous motions where he sought to compel discovery to establish the chain of custody of the video and alternatively sought to bar the video due to a lack of authentication. *See* Dkt. 258 and 271. Mr. McDavid understands this Court's ruling on the motions. He still contends, and will further establish at trial, however, that the original version is the only version of Video 1 that can be shown at trial and that the government still cannot properly authenticate whatever version they currently plan to show.

7

case are essential to his defense. But, after Kelly's case ended in acquittal, the records were destroyed after the mandated seven-year retention period. These documents, too, would support Mr. McDavid's defense and help prove that he did not act with the requisite intent. *See Glist*, 594 F.2d at 1378 (affirming finding of actual prejudice based on lost documents and investigative files being "scattered among many people and offices"). However, they are lost due to time and delay that was, by no means, necessary.

Palladino, the defense's investigator, would have also offered testimony to reinforce what these documents show, impacting the jury's determination of Mr. McDavid's intent. He was hired to investigate the allegations against Kelly and was present for crucial events that will be hotly contested at this trial. For example, an essential component of the government's case involves an alleged contract to receive a tape by Individual B. Palladino was allegedly acting as an agent for Kelly and Mr. McDavid. His testimony would have contradicted Individual B, a government cooperator, and a large portion of the case would have hinged on what he said. *See Sowa*, 34 F.3d at 450 (affirming finding that the defendant suffered actual prejudice because he could not recall the events of the offense after the preindictment delay).

At the same time, this predicament was entirely avoidable. The federal government was in actual possession of the original version of Video 1 when it first surfaced in the early 2000s. Both Chicago Police Department and FBI reports clearly state that FBI agents viewed and were sent the original VHS tape that contains Video 1. *See, e.g.*, 7/11/2002 FBI ROI; 6/7/2002 CPD ROI. In fact, at the 2008 trial, a State

witness testified that the original VHS tape was sent to FBI Agent George Skaluba to analyze, and he had sent them back to the state investigators and possibly initialed the tape to confirm the chain of custody. *See People v. Kelly*, 02-CR-14952, 5/20/2008 Trial Transcript, pgs. 164-65. The testimony also suggests that Skaluda indicated in his report that he could not identify Kelly. *Id*. at 139-40. Yet, now, the government contends that they have no way to tell what video that was or if it even exists.

Moreover, the indictment alleges that there was another agreement to retrieve a tape that involved Individual C and Individual D. The government was also aware of this allegation for over a decade. Investigators interviewed Individual D about the allegation back in early 2008, when she made similar accusations to those alleged in the indictment.

Despite possessing the tape and having known about the allegations for *decades*, the government declined to bring charges. Indeed, it declined to do so on multiple occasions. *See* 10/3/2005 FBI ROI (closing the Kelly investigation); 5/31/2018 FBI ROI (closing the casefile on new accusations against Kelly). Instead, it did nothing while being fully aware the allegations and possessing evidence for decades. As a result, they let substantial pieces of evidence get lost to time.

Even according to their allegations, nothing has changed. They are the same allegations as they were before. But now, Mr. McDavid has been deprived of significant evidence he needed to prepare his defense. The prejudice he suffers from due to this preindictment delay has deprived him of the right to a fair trial and it outweighs whatever reason the government has for such an unnecessary and

9

excessive delay. *See Sabath,* 990 F. Supp. at 1019 (dismissing the indictment due to preindictment delay because "[i]n spite of [the prosecution's] knowledge about the circumstances surrounding the investigation, ill-prepared reports, elderly and sick key witnesses, a case agent who passed away, faded memories of the government's own investigative agents, and missing physical evidence, the government consciously delayed seeking an indictment" for a mere four years). The indictment must be dismissed.

## IV.   Conclusion

WHEREFORE, Defendant Derrel McDavid respectfully moves this Honorable Court to dismiss the indictment and enter any other equitable relief it deems just under the circumstances.

                        Respectfully submitted,

                        /s/ Beau B. Brindley
                        *An Attorney for Derrel McDavid*

                        /s/ Vadim A. Glozman
                        *An Attorney for Derrel McDavid*

Beau B. Brindley
LAW OFFICES OF BEAU B. BRINDLEY
53 W. Jackson Blvd., Suite 1410
Chicago, IL 60604
(312) 765-8878

Vadim A. Glozman
Matthew P. Kralovec
LAW OFFICES OF VADIM A. GLOZMAN
53 W. Jackson Blvd., Suite 1128
Chicago, IL 60604
(312) 726-9015